# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

DONNA CHRISTINE LEE,

        Plaintiff,

vs.

Case No. 3:14-cv-521-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Donna Christine Lee ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of depression, suicidal tendencies, high blood pressure, and menstrual issues. See Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed July 14, 2014, at 148. On November 8, 2012, Plaintiff filed an application for SSI, alleging an onset date of May 1, 2003. Tr. at 108-16.[2] Plaintiff's application was denied initially, Tr. at 61-63, and was denied upon reconsideration, Tr. at 68-70.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed July 14, 2014; Reference Order (Doc. No. 13), entered July 14, 2014.

[2] The administrative transcript elsewhere indicates the protective filing date of Plaintiff's application as October 31, 2012. Tr. at 143. The transcript also includes an application dated January 27, 2010, Tr. at 127-39, that was denied on August 12, 2010, Tr. at 144, but that earlier application does not appear to be at issue in this case.

On August 29, 2013, an Administrative Law Judge ("ALJ") held a hearing during which the ALJ heard testimony from a vocational expert ("VE"). Tr. at 26-32. Apparently due to car trouble, Plaintiff herself was not in attendance. Tr. at 28. At Plaintiff's counsel's suggestion, the ALJ declared Plaintiff an unnecessary witness because of the medical evidence in the record. Tr. at 28. On September 27, 2013, the ALJ issued a Decision finding Plaintiff not disabled since the date the application was filed. Tr. at 12. Plaintiff then requested review by the Appeals Council, Tr. at 8, and submitted evidence to the Council in the form of a brief authored by her attorney representative, Tr. at 4-5, 228-29 (copy of brief). On March 10, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. Tr. at 1-3. On May 6, 2014, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal: whether the ALJ "erroneously interpreted [examining psychologist] Dr. Benton's 2013 opinion as providing that [Plaintiff] <u>would be expected</u> to improve with medication and failed to engage in the required analysis for failure to follow prescribed medical treatment prior to assuming that such improvement would definitely occur"; and whether the ALJ "failed to articulate good cause for failing to credit Dr. Castro's treating opinion[3] as well as the progress notes of Suwannee County Health Department." Plaintiff's Brief (Doc. No. 16; "Pl.'s Br."), filed September 15, 2014, at 1, 10.

---

[3] The parties dispute whether Dr. Castro is an examining or treating psychiatrist. See Plaintiff's Brief (Doc. No. 16) at 17; Defendant's Memorandum in Support of the Commissioner's Decision (Doc. No. 17) at 10. The undersigned need not address this matter, for reasons discussed below. See infra Section IV.C.

-2-

Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem.") on November 14, 2014. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of the opinions of Drs. Benton and Castro and, if appropriate, consideration of Plaintiff's ability to afford medical treatment.

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. 14-21. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since October 31, 2012, the application date." Tr. at 14 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: hypertension (HTN)

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

and an affective disorder." Tr. at 14 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 14 (emphasis and citation omitted).

The ALJ determined that Plaintiff "has the residual functional capacity [("RFC")] to perform medium work . . . with simple routine tasks, no more than occasional collaborative efforts with coworkers and supervisors, and no exposure to the general public." Tr. at 16 (emphasis and citation omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work." Tr. at 19 (emphasis omitted). At step five, the ALJ considered Plaintiff's age (fifty-two (52) years old on the date the application was filed), education ("at least a high school education"), work experience, and RFC, and determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 20. Relying on the testimony of the VE, the ALJ identified as representative jobs an "[o]ffice [h]elper" and a "[m]ail [c]lerk." Tr. at 21. The ALJ concluded that Plaintiff "has not been under a disability . . . since October 31, 2012, the date the application was filed." Tr. at 21 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less

than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

At issue are two medical opinions, those of Drs. Benton and Castro. The undersigned first summarizes the applicable law with respect to medical opinions, then summarizes the two opinions, and lastly discusses the ALJ's analysis of them.

**A. Applicable Law**

The Regulations establish a "hierarchy" among medical opinions[5] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the

---

[5] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[6] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length

---

[6] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

"One factor that the ALJ may consider" when determining the credibility of an applicant's claim "is the level of treatment sought by the claimant." Brown v. Comm'r of Soc. Sec., 425 F. App'x 813, 817 (11th Cir. 2011) (citing SSR 96-7p, 1996 WL 374186 (July 2, 1996)). "When denying an application based on a claimant's failure to comply with prescribed medical care, the ALJ must consider whether the claimant is able to afford the medical care." Id. (citing Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003)). A claimant's inability to afford medical care excuses her lack of such care. Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (stating that the court "agree[s] with every circuit that has considered the issue that poverty excuses noncompliance [with prescribed medical treatment]") (citations omitted). "Nevertheless, if the claimant's failure to follow medical

-8-

treatment is not one of the principal factors in the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error." Id. (citing Ellison, 355 F.3d at 1275).

**B. Opinions at Issue**

### 1. Dr. Benton

Dr. Benton, a clinical psychologist, examined Plaintiff on two occasions at the request of the state agency, once on April 5, 2010, see Tr. at 285-88, and a second time on January 15, 2013, see Tr. at 405-08. For the 2010 examination, Dr. Benton was provided by the state with an "Adult Function Report," a "Report of Contact," and a letter from a private counselor. Tr. at 285; see also Tr. at 282 (letter from counselor indicating that she had met with Plaintiff once in January 2010). For the 2013 examination, the state provided Dr. Benton with an "Adult Disability Report." Tr. at 405. Plaintiff reported her medical history in both examinations. She described her three hospital admissions following suicide attempts several years prior. Tr. at 286, 406. She also described how, for brief and intermittent periods in the past, she had attended counseling and taken various prescribed medications (including Prozac, Lexapro, Welbutrin, and Ativan). Tr. at 286, 406. She said both the counseling and medication were helpful. Tr. at 286, 406. She noted in 2013, however, that the anxiety medication prescribed to her the year before was not helpful. Tr. at 406. Plaintiff reported feeling anxiety in social situations and experiencing panic attacks. Tr. at 286, 406. She also reported that she was capable of performing daily tasks for herself, such as bathing, dressing, cooking, cleaning, driving, grocery shopping, and managing finances, although she often lacked motivation to do these tasks. Tr. 286-87, 406.

Dr. Benton's reports from both examinations, in 2010 and 2013, are substantially similar overall. For both, Dr. Benton noted that Plaintiff was fully cooperative and able to provide a reliable history and engage in conversation. Tr. at 285, 287, 405, 407. While noting Plaintiff's depressed affect and intermittent crying, Dr. Benton also found Plaintiff to be well oriented, displaying intact remote memory and abstract thinking, logical and goal-oriented thought processes, and no evidence of perceptual abnormalities during the interview. Tr. at 287-88, 407-08.

Certain observations differ between the two years. For example, in 2010 Plaintiff reported that "she occasionally hear[d] her name being called," Tr. at 287, while in 2013, she reported hearing voices nearly every night telling her she is "no good," Tr. at 407. Moreover, only in 2013 did the doctor note Plaintiff's poor recent memory, which she stated "may impact [Plaintiff's] capacity to carry out complex instructions." Tr. at 408. The diagnosis also changed. While in 2010 Dr. Benton diagnosed Plaintiff with social phobia and single-episode severe major depressive disorder, Tr. at 288, the 2013 diagnosis was recurrent severe major depressive disorder, Tr. at 408 (emphasis added).

As Plaintiff highlights, the prognoses differed somewhat between the two examinations. See Pl.'s Br. at 10-17. In 2010, Dr. Benton opined that Plaintiff's "overall level of mental health function will likely improve with adequate medication management," but "[w]ithout mental medical health treatment the prognosis for her ability to obtain and maintain employment in the near future appears poor." Tr. at 288 (emphasis added). In 2013, Dr. Benton opined that "the prognosis for [Plaintiff's] ability to obtain and maintain employment appears poor due to mood-related deficits in the areas of concentration and social

interaction." Tr. at 408. She added that Plaintiff "<u>may benefit</u> from psychopharmacological evaluation and mental health counseling," and that Plaintiff's "prognosis <u>may improve</u> with adequate mental health treatment." Tr. at 408 (emphasis added).

### 2. Dr. Castro

Dr. Castro appears to have met with Plaintiff on only one occasion, on July 22, 2013.[7] <u>See</u> Tr. at 478-82. Like Dr. Benton, Dr. Castro observed that Plaintiff maintained clear speech and appropriate eye contact and appeared to have an intact memory and a goal-directed, logical thought process. Tr. at 479-80. Plaintiff told the doctor that she had little interest in daily activities and events and generally felt hopeless and worthless. Tr. at 480. She reported experiencing anxiety and panic attacks, and she said she stays home to avoid such experiences. Tr. at 480. This fear and anxiety appears in part to have kept Plaintiff from filling her prescriptions, although Dr. Castro's notation on this point is unclear. <u>See</u> Tr. at 480 ("[Plaintiff] will not fill script due to past attempts [Plaintiff] reports avoiding situations that may produce anxiety."). Elsewhere in Dr. Castro's report, he noted that Plaintiff reported having previously taken "psychotropic medications for behavioral or emotional health problems," but she was "hesitant to fill script until feeling more stable." Tr. at 478. Along the same lines, and in apparent contradiction with Plaintiff's report to Dr. Benton that previous medications were helpful, <u>see</u> Tr. at 286, 406, Plaintiff indicated to Dr. Castro that her previous prescriptions "did not work," so she was "not taking [them] until [she was] more sure of her suicidal thoughts having subsided." Tr. at 478.

---

[7] As noted above, the parties dispute whether Dr. Castro is an examining or treating psychiatrist. The undersigned need not address this matter, for reasons discussed below. <u>See</u> infra Section IV.C.

Dr. Castro diagnosed Plaintiff with post-traumatic stress disorder (due to her abusive marriage that ended in 2001) and assigned her a Global Assessment of Functioning ("GAF") score of 50, which indicates "[s]evere symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Tr. at 481. He noted that after Plaintiff had made "no consistent attempt at mental health treatment despite multiple [suicide attempts], last in 2006," Plaintiff had "just decided recently to try [to] get better." Tr. at 481. Dr. Castro also noted that Plaintiff had been in "[p]ersistent isolation for many years" and was uninsured. Tr. at 481. He prescribed Prozac and a drug for insomnia (trazodone), and he instructed Plaintiff to take daily walks, improve her diet, and continue weekly therapy. Tr. at 481.

## C. Analysis of ALJ's Findings

The relevant issue as to Dr. Benton's opinion concerns the ALJ's emphasis on Plaintiff's lack of regular medical treatment. The ALJ addressed Dr. Benton's opinion as follows:

> Through her representative, [Plaintiff] has argued that Dr. Benton's assessment that her prognosis is poor in the absence of mental health treatment supports a finding of disability. However, the undersigned does not accept this argument and finds that Dr. Benton's assessment indicates that mental health treatment <u>can be effective</u> in ameliorating her symptoms. As [Plaintiff] has not been receiving regular mental health treatment, the effects of such treatment have not been shown. Significantly, Dr. Benton did not opine that [Plaintiff] was unable to work, but merely that her prognosis was poor <u>in the absence of treatment</u>.

Tr. at 19 (emphasis added).

Plaintiff contends, first, that the ALJ misinterpreted Dr. Benton's opinion as "indicat[ing] that mental health treatment <u>can be expected</u> to be effective in ameliorating her symptoms." Pl.'s Br. at 8 (emphasis added); <u>see</u> Tr. at 19. Indeed, Dr. Benton's report from 2013, which states that Plaintiff "<u>may</u> benefit" from treatment, Tr. at 408 (emphasis added), appears more tentative than the ALJ's interpretation suggests.

Plaintiff also contends that the ALJ neglected her obligation to consider whether Plaintiff was unable to afford medical treatment.[8] Pl.'s Br. at 14. An ALJ must consider a claimant's ability to afford treatment if noncompliance with prescribed treatment was "one of the principal factors in the ALJ's decision" to deny the application. <u>See</u> <u>Brown</u>, 425 F. App'x at 817 (citing <u>Ellison</u>, 355 F.3d at 1275); <u>see also</u> <u>Dawkins</u>, 848 F.2d at 1214 (remanding when the ALJ's adverse disability finding was "inextricably tied to the finding of noncompliance").

Here, it is clear that at least part of the ALJ's analysis, particularly with respect to Dr. Benton's opinion, centered on the relation between Plaintiff's ability to work and her lack of treatment. The ALJ emphasized Plaintiff's lack of treatment in concluding that Dr. Benton

---

[8] Instead, the ALJ concluded that Plaintiff "<u>chooses</u> to not even participate in any treatment on a regular basis." Tr. at 18 (emphasis added). The administrative transcript, however, lacks any clear indication of why Plaintiff did not maintain prescribed medication or treatment. Some evidence, as described above, suggests Plaintiff did not maintain treatment because she either felt it was ineffective or feared suffering panic attacks in public while filling her prescriptions. <u>See</u> Tr. at 478, 480. Other evidence suggests that motivation was a factor. <u>See</u> Tr. at 481 (Dr. Castro reporting that Plaintiff had "just decided recently to try [to] get better"). However, at least some evidence suggests that Plaintiff was unable to afford care. For instance, Plaintiff stated on a Social Security Administration ("SSA") Disability Report from January 30, 2013, that she had "not been to the doctor because [she] c[ould] not afford to go to one." Tr. at 196. She explained further that "[t]he mental health [clinic] here lost its state funding so [she] c[ould] not go there." Tr. at 196. In 2010, Plaintiff appears to have canceled a follow-up appointment with a private counseling service because she could not afford it. <u>See</u> Tr. at 282.

"did not opine that [Plaintiff] was unable to work."[9] Tr. at 19 (emphasis added). The ALJ then relied partly on Dr. Benton's opinion to conclude that all of the medical opinions on record[10] were "consistent with each other in that none of them find [Plaintiff] unable to work," and the ALJ thus gave these opinions significant weight. Tr. at 19 (emphasis added). Although the ALJ clearly focused on Plaintiff's lack of treatment in her analysis, it is unclear to the Court whether this was a "principal factor" in the ALJ's ultimate determination that Plaintiff is not disabled. The undersigned finds that remand is required to clarify this matter. See Dawkins, 848 F.2d at 1214.

On remand, the ALJ shall reconsider Dr. Benton's opinion and clarify whether the ALJ reads the opinion to indicate that Plaintiff's ability to work depends on her receiving treatment. If so, clarify whether Plaintiff's lack of treatment is a principal factor in the overall determination that Plaintiff is not disabled. If it is, the ALJ shall consider whether Plaintiff is unable to afford such treatment, in which case Plaintiff's lack of treatment must be excused. See Dawkins, 848 F.2d at 1213-14.

As to Dr. Castro's opinion, the ALJ's analysis is closely tied with the analysis of Dr. Benton and Plaintiff's lack of treatment. The ALJ found that all of the medical opinions,

---

[9] The ALJ appears to have interpreted Dr. Benton's opinion to suggest that Plaintiff would be able to work if she received appropriate treatment. As quoted above, the ALJ stated, "Significantly, Dr. Benton did not opine that [Plaintiff] was unable to work, but merely that her prognosis was poor in the absence of treatment." Tr. at 19 (emphasis added). The ALJ's interpretation appears to derive from the following portion of Dr. Benton's 2013 report: "At the current time the prognosis for [Plaintiff's] ability to obtain and maintain employment appears poor due to mood-related deficits in the areas of concentration and social interaction. She may benefit from psychopharmacological evaluation and mental health counseling. Her prognosis may improve with adequate mental health treatment." Tr. at 408.

[10] Other than Drs. Benton and Castro, the only doctors addressed in the Decision were three non-examining doctors who "reviewed [Plaintiff's] medical records for the [s]tate agency." Tr. at 17-18.

including those of Drs. Benton and Castro, were "consistent with each other." Tr. at 19. Moreover, the ALJ's analysis of Dr. Castro's opinion specifically addressed Plaintiff's lack of treatment. In rejecting the GAF score that Dr. Castro assigned to Plaintiff, the ALJ reasoned as follows:

> [T]his score is not consistent with Dr. Castro's corresponding treatment notes from this time period. Significantly, the record is largely devoid of mental health treatment since 2010 apart from her recent treatment with Dr. Castro. This is not consistent with the presence of a mental health condition which precludes [Plaintiff] from performing any work.

Tr. at 18-19. The ALJ's analysis of Dr. Castro, therefore, further obscures whether Plaintiff's lack of treatment is a principal factor in the ALJ's ultimate determination that Plaintiff is not disabled. On remand, the ALJ shall also reconsider Dr. Castro's opinion.

Because the ALJ must reconsider Dr. Castro's opinion, the Court need not address Plaintiff's arguments regarding Dr. Castro. As to Plaintiff's vague argument concerning the ALJ's use of "the progress notes of the Suwannee County Health Department," Pl.'s Br. at 1, 17, 20, the undersigned finds nothing in these documents that is clearly relevant to the ALJ's analysis.[11]

## V. Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of

---

[11] The health department progress notes receive only passing mention in Plaintiff's argument, in which Plaintiff vaguely asserts that the ALJ failed to credit them and that Dr. Castro's opinion is consistent with them. See Pl.'s Br. at 1, 17, 20. The reports in the administrative transcript primarily concern Plaintiff's physical (rather than psychological) condition. See Tr. at 308-403, 409-76. The ALJ only mentioned them to list blood pressure readings from 2011 and 2012. Tr. at 17.

42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

    (a)    Reconsider the opinions of Drs. Benton and Castro;

    (b)    If appropriate, clarify whether Plaintiff's failure to maintain treatment is a factor in the determination that Plaintiff is not disabled;

    (c)    If appropriate, consider whether Plaintiff is unable to afford treatment; and

    (d)    Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) or § 1383(d)(2) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on September 10, 2015.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

clr
Copies to:
Counsel of record